UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RUSSELL PALMER,

                                        Petitioner,

                                                              9:18-CV-1133
v.                                                            (GTS/TWD)

BELL,

                                        Respondent.
_____

APPEARANCES:                              OF COUNSEL:

RUSSELL PALMER
Petitioner, *pro se*
15-A-2758
Clinton Correctional Facility
P.O. Box 2000
Dannemora, NY 12929

HON. LETITIA JAMES                        PRISCILLA STEWARD, ESQ.
New York State Attorney General - Albany  Assistant Attorney General
The Capitol
Albany, NY 12224
Attorney for Respondent

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

This matter has been referred for a Report-Recommendation, pursuant to 28 U.S.C. §

636(b) and Northern District Local Rule 72.3(c), by the Honorable Glenn T. Suddaby, Chief

United States District Judge.  Russell Palmer ("Palmer" or "Petitioner") filed a petition for a writ

of habeas corpus, pursuant to 28 U.S.C. § 2254, to vacate his conviction, in the County Court of

the State of New York, Albany County (the "Trial Court").  (Dkt. No. 1.)   On May 15, 2015, a

jury found Petitioner guilty of the following crimes: (1) murder in the second degree; (2)

conspiracy in the second degree; (3) two counts of criminal possession of a weapon in the second

degree; and (4) criminal possession of a controlled substance in the second degree.  (T. 1126-

1128.)[1]  Petitioner was sentenced to an aggregate prison term of 39 years to life, followed by five

years of post release supervision.  (Dkt. No. 1 at 1.)

Petitioner challenges his conviction on the following grounds: (1) his pretrial counsel

provided ineffective assistance; (2) the Trial Court lacked jurisdiction due to a defective

indictment; (3) judicial misconduct; (4) the Trial Court erred when it permitted the admission of

Petitioner's videotaped statement; (5) the Trial Court erred when it permitted the admission of

DNA evidence; (6) the Trial Court erred when it admitted evidence discovered pursuant to a

defective search warrant; (7) the Trial Court erred when it admitted Petitioner's cell phone

records; (8) the evidence did not support the conspiracy conviction; and (9) the jury instructions

on the murder charge were contradictory and confusing.  (Dkt. No. 1.)  Bell, through the State of

New York, (the "State" or "Respondent") opposes Palmer's petition.  (Dkt. Nos. 19, 20.)  For the

reasons set forth below, this Court recommends denying Petitioner's request for a writ of habeas

corpus in its entirety.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Arrest

On December 23, 2013, at approximately 11:00 a.m., Petitioner was arrested at the

Desmond Americana Hotel in Albany, New York after a traffic stop. (SR. at 253, 1224.)

---

[1]  To maintain consistency, the Court adopts Respondent's convention for citing to the record.  To that end, "H" refers to the transcript of the suppression hearing; "T" refers to the trial transcript; and "TR. (date)" refers to transcripts from other proceedings. "H," "T," and "TR." are found at Dkt. No. 21-2, Dkt. No. 21-3, and Dkt. No. 21-4.  Furthermore, "SR" refers to the state court record, found at Dkt. No. 21-1.  Citations to the submissions refer to the pagination generated by CM/ECF, the Court's electronic filing system.

Case 9:18-cv-01133-GTS-TWD   Document 48   Filed 10/19/21   Page 3 of 40

Petitioner was transported to the City of Albany Police Department and, at 3:47 p.m., Detective Quinlivan ("Det. Quinlivan") administered *Miranda* warnings. (*Id*. at 343, 1224; H. at 171-172.) Petitioner indicated he understood his rights and agreed to answer questions. (H. at 171-172.) At that time, detectives took a DNA swab from Petitioner and confiscated two cell phones. (T. at 90; SR. at 1051.)

On December 24, 2013, Trooper Patrick Hogan ("Trooper Hogan") filed three felony complaints accusing Petitioner of criminal possession of a controlled substance and criminal possession of a weapon on December 23, 2013, at approximately 11:05 a.m. (SR. at 40-42.)

### B. Pretrial Proceedings

#### 1. Preliminary Hearing[2]

On December 26, 2013, a preliminary hearing was held. (SR. at 81-116.) Petitioner was represented at the preliminary hearing by Molly Rhodes, Esq., a court appointed public defender. *Id*. at 59, 81. At the hearing, the prosecution called Detective Scott Gottesman ("Det. Gottesman"). *Id*. at 81-110. Attorney Rhodes cross examined the witness and posed questions related to his search of Petitioner's vehicle. *Id*. at 98-104. The defense did not call any witnesses. *Id*. at 110. At the conclusion of the hearing, the court found reasonable cause to believe Petitioner had committed a felony, and ordered Petitioner held for action by the Grand Jury. (SR. at 116.)

---

[2] A preliminary hearing is held to determine whether there is reasonable cause to believe that a defendant has committed a felony and should be held for grand jury action. *See* N.Y. C.P.L. § 180 .70(1).

### 2. Grand Jury and Superseding Indictment

In February 2014, Petitioner testified before the Grand Jury. (SR. at 875-888.) Petitioner was represented at the proceedings by Attorney Schupp, a court appointed public defender. *Id*. at 888.

On May 13, 2014, the District Attorney notified Petitioner's counsel that the case would be presented to the Grand Jury on May 20, 2014. (SR. at 67.)

In June 2014, the State obtained a six-count superseding indictment charging Petitioner with second degree murder in connection with the shooting of Sylvester Scott ("Scott") on December 23, 2013, at approximately 8:49 a.m. in the area of 81 Grand Street in Albany, New York.[3] (SR. at 296.) The superseding indictment also charged Petitioner with second degree conspiracy, two counts of second degree criminal possession of a weapon, second degree criminal possession of a controlled substance, and third degree criminal possession of a controlled substance. *Id*. at 297-302.

### 3. Suppression Hearing

On August 12, 2014, Petitioner filed a counseled omnibus motion. (SR. at 303-310.) Of relevance herein, Petitioner sought a *Huntley* and *Dunaway-Mapp*[4] hearing related to tangible

---

[3] Petitioner's nephew, Kareem Murray was also charged with the second degree murder of Sylvester Scott. The indictment also charged Murray with second-degree conspiracy, two counts of second-degree criminal possession of a weapon, second-degree criminal possession of a controlled substance, and third-degree criminal possession of a controlled substance. *See* Murray v. Noeth, No. 9:19-CV-00224 (JKS), 2020 WL 4815972, at *1 (N.D.N.Y. Aug. 19, 2020).

[4] A pretrial hearing pursuant to *People v. Huntley*, 15 N.Y.2d 72 (1965), is held to determine the voluntariness of inculpatory statements made by a criminal defendant to law enforcement officers. *See Huntley*, 15 N.Y.2d at 77–78. A *Dunaway* hearing is used to determine whether an arrest is supported by probable cause. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248 (1979). A *Mapp* hearing is a hearing to determine whether suppression of evidence obtained pursuant to a search or seizure by police officers is constitutionally warranted. *See Mapp v. Ohio*, 367 U.S. 643 (1961).

property recovered from a search of his vehicle and his oral statements. *Id.* The Trial Court scheduled a *Huntley* and *Dunaway-Mapp* hearing (hereinafter "suppression hearing") to resolve the motions to suppress statements and tangible property. *Id.* at 315-318.

The suppression hearing was held in Albany County Court on January 12, 2015, and January 15, 2015. (H. at 1, 115.) Petitioner was represented at the suppression hearing by Attorney Blanchfield. *Id.* at 2. During the hearing, the prosecution called six various witnesses. *Id.* at 9-248.

Trooper Hogan testified he was part of a team conducting surveillance of vehicles parked at the Desmond Americana Hotel on December 23, 2013. (H. at 11, 19-20.) While in transit, Trooper Hogan received a radio call that a target vehicle was "on the move." *Id.* at 20-23, 38. Trooper Hogan was advised that the "subjects of interest" were in a grey Hyundai and that a traffic stop was necessary to identify the subjects. *Id.* at 13-14, 23, 25. Trooper Hogan called for assistance from a "uniformed trooper," to effectuate a traffic stop. *Id.* at 15, 25. As a result of the traffic stop, the vehicle pulled into the parking lot of the Desmond Americana Hotel. (SR. at 15.)

Trooper Hogan arrived at the Desmond Americana at approximately 11:00 a.m. and found the Hyundai stopped on the west side of the hotel. (H. at 39.) Trooper Hogan also observed a 2003 Yukon "a short distance away in the parking lot in a parking space." *Id.* Trooper Hogan testified he did not enter or search the 2003 Yukon. *Id.* at 30-31, 47-48. Trooper Hogan drafted and signed a felony complaint and indicated Petitioner was in possession of "certain items at 11 in the morning." (H. at 17, 33.)

According to testimony by Detective Vogel, he interviewed Petitioner after Det. Quinlivan advised Petitioner of his *Miranda* rights. (H. at 171.)  At that time, Petitioner had not been charged with any crime.  *Id*. at 185-186.

Detective Haggerty ("Det. Haggerty ") testified he prepared a search warrant application for a 2003 GMC Yukon on December 23, 2013.  (H. at 118-120.)  Det. Haggerty stated that Judge Thomas Keefe executed the warrant on December 23, 2013, at 9:20 p.m.  *Id*. at 123-124. The vehicle was searched at approximately 10:30 p.m. on December 23, 2013. *Id.* at 128. Detective Gottesman testified officers seized one Ruger 9-millimeter, one Glock 45-millimeter, ammunition, cocaine, and crack-cocaine from the vehicle.  *Id*. at 141.

Petitioner did not call any witnesses and did not testify at the suppression hearing. (H. at 192.)

The Trial Court rendered a written decision denying Petitioner's motion to suppress.  (SR. at 339-349.)  Of relevance herein, the Trial Court held the prosecution did not establish probable cause for Petitioner's arrest.  *Id.* at 345.  However, applying the principles of attenuation, the Trial Court denied Petitioner's motion to suppress evidence seized from the Yukon.  *Id*. at 345-347.  The Trial Court held that the "pronounced break" between Petitioner's arrest and the search of the vehicle "dissipated" any "taint" and, further, the officers at the police department had sufficient evidence to establish probable cause for Petitioner's arrest.  *Id*. at 346.

The Trial Court also denied Petitioner's motion to suppress his recorded statement noting, "the intervening act of transporting [Petitioner] from the scene of the Desmond to the police station, along with the *Miranda* warnings given to him by officers not involved in his arrest,"

were "intervening circumstances such that defendant could no longer be said to be under the influence of the illegal arrest." (SR. at 347.)

### C. The Trial[5]

Jury trial began on May 6, 2015, in Albany County Court. (T. at 1.) The prosecution called approximately fifty witnesses including officers involved with telephone and physical surveillance, officers who responded and processed evidence from the scene of Scott's murder, and ballistics and DNA experts. (T. at 29-841.)

Investigator Robert Missenis ("Inv. Missenis") testified he was involved in an "eavesdropping" investigation related to Roberto Leandry ("Leandry") and Kareem Murray ("Murray") in the fall of 2013. (T. at 326-327, 441-442.) As part of that investigation, Inv. Missenis applied for an eavesdropping warrant with respect to Leandry's cellular telephone number (518) 629-6852 and Murray's cellular telephone number (347) 340-8947. *Id*. at 442-443.

Detective James Olsen ("Det. Olsen") testified he was investigating a burglary and sexual assault on December 20, 2013. (T. at 73-74.) During the course of his investigation, he spoke with the victim's boyfriend, Murray, at Albany Medical Center. *Id*. at 75. Det. Olsen offered Murray his name and telephone number and Murray responded, "no disrespect, I don't want it. I'm going to take care of it myself." *Id*.

Leandry testified he received a telephone call on December 20, 2013, from Murray. (T. at 461.) Murray told Leandry that his girlfriend had been raped. *Id*. Leandry told Murray he had a "strizzy", or a gun, a 9-millimeter Ruger semi-automatic pistol. *Id*. at 463-464. Later in the day,

---

[5] Prior to trial, Petitioner filed a motion to sever his trial from Murray's trial. (SR. at 350.) The trial court denied the motion. *Id*. at 363-365.

7

Leandry met Murray and Petitioner in Waterford. *Id*. at 464. Murray was driving a Yukon. (T. at 465, 470.) Leandry gave Murray a 9-millimeter Ruger and bullets. *Id*. at 465-466. Leandry received another call from Murray on December 21, 2013, at approximately 10:42 p.m. *Id*. at 466. Murray asked Leandry if he had another gun. *Id*. at 467. Leandry said he did not. *Id*.

On December 21, 2013, Detective Behrens ("Det. Behrens") received a report of shots fired at 71 Grand Street. (T. at 79-80.) Det. Behrens responded to the scene and collected evidence, including shell casings. *Id*. at 81-82. The jury heard testimony from a ballistic expert that the shell casings were ejected from the Ruger 9-millimeter seized from Petitioner's vehicle; a 2003 GMC Yukon. *Id*. at 82-83, 589, 630.

Investigator McMullen testified telephone calls came into Leandry's telephone from (518) 281-9682, a number belonging to Renee Smith/Palmer (Murray's mother and Petitioner's sister) on December 23, 2013, at approximately 10:22 a.m., 10:27 a.m., and 12:56 p.m. (T. at 327-328, 381, 402, 453.) Leandry testified about the conversation and stated that Murray asked Leandry for bullets for a .45 Glock that Leandry had previously given to Murray. *Id*. at 467-468.

The prosecution introduced videos depicting Petitioner's black GMC 2003 Yukon traveling throughout the city of Albany on December 23, 2013. Through witness testimony, the jury heard that the vehicle left the Desmond Hotel at 7:37 a.m. and was observed at 8:03 a.m. near 40 South Ferry, where Petitioner entered the vehicle. (SR. at 206; T. at 317-318, 778, 786-788.) At 8:12 a.m., two passengers exited the Yukon at the Department of Social Services on North Pearl. (T. at 779, 790.) The vehicle remained at that location for twenty minutes, traveled to Washington Avenue, and returned to Social Services at 8:38 a.m. *Id*. at 793-795. At 8:45 a.m. the vehicle was seen in the area of 67 Grand Street. *Id*. at 783. At 8:46 a.m., Scott entered a

store at the intersection of Grand Street and Madison Avenue. *Id.* at 799-800. Scott exited the store and proceeded down the sidewalk. (T. at 802.) At approximately 8:53 a.m., the Yukon is observed in the area. *Id.*

Scott was shot on December 23, 2013, at approximately 8:48 a.m. in the area of 81 Grand Street. (T. at 33, 37-38, 802-803.)

Det. Quinlivan testified he confiscated two phones from Palmer on the day of the homicide. (T. at 399-401.) Telephone records showed calls between Murray and Petitioner on December 23, 2013, at 7:58 a.m. and 7:59 a.m. (*Id*. at 231-232, 493-506.[6])

Detective Shea executed a search warrant for Petitioner's vehicle. (T. at 158.) Detectives found a box of ammunition, a Glock .45 caliber semi-automatic handgun and a 9-millimeter Ruger semi-automatic firearm. *Id.* at 158-167. The jury heard testimony that shell casings from the scene matched the weapons found in Petitioner's vehicle. *Id.* at 145, 628-636. The jury also heard testimony that Petitioner's DNA was found on live ammunition from the Glock and the trigger of the Ruger. *Id.* at 698-699. A detective testified that the bullet that killed Scott was a 9-millimeter fired from a Ruger semi-automatic pistol. *Id*. at 101, 622.

During closing arguments, the prosecutor played a video and stated, "[w]e know [ ] that Russell Palmer was in the car at the time that Sylvester was killed." (T. at 942.) Defense counsel objected:

> Mr. Blanchfield: Judge, my only objection to that, there was no proof in this trial that that's a picture of Russell Palmer.
> The Court: Of that picture?
> Mr. Blanchfield: Yeah.

---

[6] In his Pro Se Brief on Appeal and in the Traverse, Petitioner admits "cell phones (518) 210-6617 and (518) 744-2864 [. . . ] belong to Petitioner[.]" (SR. at 853; Dkt. No. 31-1 at 13).

> The Court: Yes, there is.
> Mr. Galarneau: Now, DNA - -
> The Court: And ladies and gentlemen, it's your recollection that controls.

(T. at 942.)

The jury found Petitioner guilty of second-degree murder, second degree conspiracy, second degree possession of a controlled substance, and second degree possession of weapons. (T. at 1125-1132.)  On June 22, 2015, Petitioner was sentenced as a second felony offender to 25 years to life for murder, 12½  to 25 years for conspiracy, 15 years determinate (plus 5 years of post-release supervision) for each of the weapons convictions to run concurrently, and 14 years determinate (plus 5 years of post-release supervision) for criminal possession of a controlled substance, to run consecutively.[7]  *Id*. at 1173-1174.

### D.  C.P.L. § 440.10 Motion

In a pro se motion, Petitioner moved to vacate the verdict pursuant to New York Criminal Procedure Law § 440.10. (SR. at 1-118.)  Petitioner argued Attorney Rhodes was ineffective because she failed to subpoena Trooper Hogan as a witness at the preliminary hearing after Trooper Hogan "recanted his complaint off the record[.]"  *Id*.  Petitioner also argued Attorney Schupp was ineffective because he waived Petitioner's right to be prosecuted by the indictment without Petitioner's consent.  *Id*.

On July, 27, 2016, the Trial Court denied the motion reasoning, "defendant's allegation that counsel waived prosecution by indictment is factually erroneous." (SR. at 148-152.)  The

---

[7]  In a pro se motion, Petitioner moved to vacate the sentence pursuant to N.Y. C.P.L. § 440.20 challenging the consecutive sentence.  (SR. at 1234-1246.)  The Trial Court denied the motion.  *Id*. at 1269-1271.  Petitioner did not seek leave to appeal the denial.

Trial Court also found Petitioner's allegations related to Trooper Hogan's intended testimony "unsupported" and "conclusory." *Id.*

### E.  Direct Appeal and Appeal from C.P.L. § 440.10 Motion

On August 24, 2016, Petitioner filed a counseled brief and appendix in the Appellate Division, Third Department ("AD").  (SR. 183-240.)  The issues raised by Petitioner in his direct appeal to the AD included: (1) the Trial Court erred in ruling Petitioner lacked standing to move to suppress telephone conversations; (2) the Trial Court erred in denying Petitioner's motion to suppress his statements to police; (3) the Trial Court deprived Petitioner of a fair trial by denying his motion to sever; (4) challenges to the Trial Court's *Batson* rulings; (5) a challenge to the Trial Court's denial of Petitioner's "for cause" challenge to a prospective juror; and (6) the Trial Court erred in admitting evidence that one of the handguns used in the charged crime was fired two days earlier.  *Id.*

Petitioner sought leave to appeal to the AD from the denial of his CPL § 440.10 motion. The AD granted leave to appeal on September 20, 2016.  (SR. at 182.)  Accordingly, Petitioner filed a counseled supplemental brief and appendix arguing ineffective assistance of counsel during the preliminary hearing.  (SR. at 778-813.)

Petitioner filed supplemental pro se briefs[8] and raised the following issues: (1) ineffective assistance of counsel related to Attorney Schupp's representation during Grand Jury proceedings in February 2014; (2) jurisdictional challenges due to a defective indictment: (3) judicial misconduct; (4) challenges to the DNA evidence; (5) the Trial Court erred in failing to suppress evidence including telephone calls and statements; (6) the jury instructions were erroneous; (7)

---

[8]  The AD acknowledge receipt of Petitioner's pro se supplemental briefs.  (Dkt. No. 31 at 16.)

the Trial Court erred in failing to sever the trials; (8) challenges to jury selection; and (9)

challenges to the *Molineux* ruling.[9]  (SR. at 814-862; 1184-1216.)  The AD dismissed Petitioner's

direct appeal and his appeal of his C.P.L. § 440.10 motion on May 10, 2018.  *Id*. at 1221-1226.

First, the AD noted Petitioner's arguments related to severance and the *Batson* ruling

"were addressed in the appeal of the codefendant" and concluded Petitioner failed to set forth any

reason to "decide differently in this appeal."  *People v. Palmer*, 161 A.D.3d 1291 (3d Dep't

2018).)  The AD also found no merit to Petitioner's challenge to the Trial Court's denial of his

"for-cause challenge" to a prospective juror.  *Id*. at 1294.

Next, the AD concluded the Trial Court appropriately denied Petitioner's omnibus motion

to suppress the evidence acquired by means of an eavesdropping warrant due to lack of standing.

*Id.* at 1293.  The AD also disagreed with Petitioner's claim that the Trial Court erred in failing to

suppress his statements made to police.  *Id*.  The AD concluded, "the proof in this case is

sufficient to support the finding of attenuation."  *Id*. at 1294.  The AD noted that Petitioner was

arrested at 11:00 a.m. and transported to the Police Department where his *Miranda* rights were

administered at 3:45 p.m. by officers who were not involved in the arrest.  *Id*.  The AD

concluded that the officers at the Police Department had sufficient evidence to establish probable

cause for Petitioner's arrest.  *Id*.  The AD found "a thorough review of the record, evinces 'there is

no demonstrable proof in the record that the initial detention of defendant was motivated by bad

faith or a nefarious police purpose'" and found "no reason to disturb County Court's

determination inasmuch as 'sufficient evidence that the required nexus between the detention and

---

[9]  *People v. Molineux*, 168 N.Y. 264 (1901) (holding that a defendant is entitled to a pre-trial hearing to determine the admissibility of the defendant's uncharged crimes as part of the People's direct case).

the statements is absent, there would be no deterrence and therefore no reason to invoke the exclusionary rule.'"  *Id.*

The AD found no merit to Petitioner's challenge to the Trial Court's ruling permitting the People to inquire into Petitioner's involvement in a shooting two days prior to the victim's death. *Id.* at 1295.  The AD reasoned that evidence of Petitioner's involvement in a prior shooting "constitutes additional evidence of the charged crime of conspiracy as evidence of an over act committed by defendant in furtherance of the conspiracy to commit murder."  *Id.*

In the context of Petitioner's ineffective assistance of counsel claim, the AD found Petitioner was not denied effective assistance of counsel relative to counsel's failure to call Trooper Hogan as a witness at the preliminary hearing.  *Id.*  The AD noted, "Hogan testified at length during the suppression hearing, at which defendant was represented by counsel who thoroughly cross-examined Hogan[.]"  *Id.*  The AD found, "defendant's allegations regarding what he believes Hogan would have testified to at the preliminary hearing are purely speculative and not supported by the record."  *Id.*

The AD concluded, "[w]e have considered defendant's remaining arguments and find them to be without merit.  *Id.* at 1296.

### F.  Court of Appeals

The New York State Court of Appeals denied Petitioner's application for leave to appeal the AD's decision on July 19, 2018.  (SR. at 1233.)

### G.  Proceedings in this Court

On September 20, 2018, Petitioner, acting pro se, filed a petition for habeas corpus.  (Dkt. No. 1 at 1.)  On October 25, 2018, this Court issued an order directing the Attorney General for

the State of New York to file a response to the petition.  (Dkt. No. 8.)  On February 20, 2019, the

State filed a response and memorandum of law.  (Dkt. Nos. 19, 20.)  Petitioner filed a traverse

and supplemental traverse.  (Dkt. Nos. 31, 32.)  In response, the Respondent withdrew his

argument that Petitioner failed to exhaust his state court remedies prior to filing the petition.

(Dkt. Nos. 33, 34.)  Petitioner filed another supplemental traverse.  (Dkt. No. 36.)

## II.     ANALYSIS

### A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal

court may grant habeas relief with respect to a charge adjudicated on the merits in state court

only if, based upon the record before the state court, the state court's decision: (1) was contrary

to, or involved an unreasonable application of, clearly established federal law, as determined by

the Supreme Court of the United States; or (2) was based on an unreasonable determination of

the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d);

*see also Williams v. Taylor*, 529 U.S. 362, 409-10 (2000).  A decision "involves an unreasonable

application" of federal law where it "correctly identifies the governing legal rule but applies it

unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407-08.  A

petitioner must therefore demonstrate that the state court's decision was "so lacking in

justification that there was an error well understood and comprehended in existing law beyond

any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

This is a "highly deferential standard," requiring that state courts "be given the benefit of the

doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted).  However, "[i]t preserves

authority to issue the writ in cases where there is no possibility fairminded jurists could disagree

that the state court's decision conflicts with [the Supreme] Court's precedents." *Nevada v. Jackson*, 569 U.S. 505, 508-09 (2013) (quoting *Harrington*, 562 U.S. at 102).

Additionally, federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "clear and convincing evidence." *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting § 2254(e)(1)). "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015).

Where a state court denies a claim on the merits without explaining its reasons, a petitioner still bears the burden to show "there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98. In those cases, "a habeas court must determine what arguments or theories . . . could have supported[ ] the state court's decision," and then accord deference if "it is possible [that] fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* at 102; *see also Shinn v. Kayer*, ⎯⎯ U.S. ⎯⎯, 141 S. Ct. 517, 524 (2020) ("[W]e must determine what arguments or theories . . . could have supported the state court's determination . . . . Then, we must assess whether fairminded jurists could disagree on the correctness of the state court's decision if based on one of those arguments or theories") (internal quotation marks omitted).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for

not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman*, 501 U.S. at 740; *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez*, 458 F.3d at 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama*, 235 F.3d at 810-11 (same).

### B. Ineffective Assistance of Counsel

Petitioner argues pretrial counsel provided ineffective assistance of counsel when she failed to call Trooper Hogan as a witness at the preliminary hearing. (Dkt. No. 1-1 at 14-27.) Petitioner also argues pretrial counsel provided ineffective assistance of counsel when he waived Petitioner's right to be prosecuted by indictment without his consent. *Id*. at 27-29.

The Sixth Amendment mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const., amend VI. "[T]he right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).

To prevail on an ineffective assistance of counsel claim, a habeas petitioner must: (1) show that counsel's performance fell below an "objective standard of reasonableness" under "prevailing professional norms," and (2) demonstrate that the alleged inefficiency resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "[An] ineffective assistance

of counsel claim must be rejected if the defendant fails to meet either the performance prong or the prejudice prong." *Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011).

Under the first prong of *Strickland*, the reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 689). The Court recognized in *Strickland* that "there are countless ways to provide effective assistance in any given case," and that even the "best criminal defense attorneys would not defend a particular client the same way." *Strickland*, 466 U.S. at 689.

Regarding the second prong of the test, the question is whether there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal. *Id.* Under *Strickland*, "counsel should be strongly presumed to have rendered adequate assistance and made all decisions in the exercise of reasonable professional judgment." *Id.* at 690.

Further, the AEDPA requires the federal habeas court to accord deference to the state court's ruling on claims of ineffective assistance of counsel. *See Richter*, 562 U.S. at 101 (noting, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."). Thus, when ineffective assistance claims are considered under the AEDPA the reviewing court affords a "doubly" deferential standard regarding the state court opinion. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Accordingly, when § 2254(d) applies, "[t]he pivotal question" for the federal habeas

17

court "is whether the state court's application of the *Strickland* standard was unreasonable."
*Richter*, 562 U.S. at 101.

### 1. Failure to Call Witness

Petitioner contends pretrial counsel was ineffective because she failed to call Trooper Hogan as a witness during the preliminary hearing.  Petitioner asserts Trooper Hogan would have testified he searched Petitioner's vehicle, without a warrant, at 11:05 a.m. on December 23, 2013, thereby contradicting the information in the criminal complaints.  (Dkt. No. 1-1 at 24-27.)  Petitioner raised this argument in his § 440.10 motion and on direct appeal. (SR. at 1-39, 778.)  The Trial Court applied New York law, but cited to "the guarantee[] by the Sixth Amendment" and concluded "[i]t is inappropriate for the Court to second-guess an attorney's legitimate strategic and tactical decisions as long as defendant received meaningful representation."  *Id.* at 152.  The AD also rejected the argument finding "no merit to this contention as Hogan testified at length during the suppression hearing, at which defendant was represented by counsel who thoroughly cross-examined Hogan, as well as the People's other witnesses."  *Palmer*, 161 A.D.3d at 1295.  The AD also concluded, "defendant's allegations regarding what he believes Hogan would have testified to at the preliminary hearing are purely speculative and not supported by the record."  *Id.*  This Court must view the state court decisions through a doubly deferential lens.  *See generally Cullen*, 563 U.S. at 190.

An attorney's decision "whether to call specific witnesses - even ones that might offer exculpatory evidence - is ordinarily not viewed as a lapse in professional representation."  *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000); *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1986) ("The decision whether to call any witnesses on behalf of the defendant, and if so

which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial."), *cert denied*, 484 U.S. 958 (1987); *United States v. Smith*, 198 F.3d 377, 386 (2d Cir. 1999). Indeed, "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689 (citation omitted). To demonstrate an attorney was ineffective because he/she failed to explore an issue or present certain evidence, a petitioner must demonstrate the absence of strategic or other legitimate explanations for defense counsel's failure. However, "[i]n many instances cross-examination will be sufficient[.]" *Harrington*, 562 U.S. at 111.

During the preliminary hearing, the prosecution called one witness, Det. Gottesman. Petitioner's counsel cross-examined Det. Gottesman regarding his surveillance, the application for the search warrant, and his search of Petitioner's vehicle. (SR. at 98-109.) Counsel also made a closing statement. *Id*. at 114-115. A review of the record reveals Petitioner's pretrial counsel comported with constitutional standards and rendered effective assistance overall. *See Richter*, 562 U.S. at 111 (2011) ("it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy").

Moreover, Petitioner cannot demonstrate that, but for the absence of Trooper Hogan's preliminary hearing testimony, the result of the trial would have been different. *See Strickland*, 466 U.S. at 694. As the AD concluded, "defendant's allegations regarding what he believes Hogan would have testified to at the preliminary hearing are purely speculative and not supported by the record." *Palmer*, 161 A.D.3d at 1295. Indeed, Trooper Hogan did testify at the suppression hearing and his testimony was not in conformity with what Petitioner surmised. To

the contrary, Trooper Hogan testified he did not enter Petitioner's vehicle and did not take part in the search of the vehicle. (H. at 30-31, 47-48.) On cross examination by Petitioner's counsel, Trooper Hogan was asked the following questions and gave the following answers:

> Q. You indicated you filled out the felony complaints and indicated that Mr. Palmer was in possession of certain items at 11 in the morning. Is that right?
> A. Yes.
> Q. Is that a result of you or other members of the State Police at the time entering into the Yukon while in the Desmond parking lot?
> A. No.

(H. at 33.)

Additional record evidence supports Trooper Hogan's testimony. Det. Haggerty testified a search warrant application for a 2003 GMC Yukon was executed by Judge Keefe on December 23, 2013, at 9:20 p.m. (H. at 118-124.) Accordingly, the vehicle was not searched until approximately 10:30 p.m. on December 23, 2013. *Id*. at 128. The complaints, filed by Trooper Hogan, were signed and dated December 24, 2013; the day after the vehicle was searched. (SR. at 40-44.)

Because Petitioner cannot establish either prong of the *Strickland* test, his ineffective assistance of counsel claim is without merit. *See Thomas v. Gipson*, No. 2:11-CV-00180, 2014 WL 878905, at *8–9 (E.D. Cal. Mar. 5, 2014) (reasoning that counsel's failure to call a witness at a preliminary hearing was not prejudicial because the proposed testimony would not "eradicate the showing of probable cause."). Because the AD's reasoning is sound and comports with federal law, I recommend that the Court deny the petition on this ground.

## 2. Waiver of Indictment

Petitioner argues pretrial counsel provided ineffective assistance of counsel when he waived Petitioner's right to be prosecuted by indictment without his consent. (Dkt. No. 1-1- at 27-29.) Petitioner raised this issue in his § 440.10 motion and the Trial Court found, "defendant's allegation that counsel waived prosecution by indictment is factually erroneous." (SR. at 148-149.)

Petitioner raised this argument in his pro se brief to the AD; however, Petitioner's appellate counsel declined to address this argument in his brief stating, "[s]ince the record establishes conclusively that Mr. Palmer stood trial on a superseding indictment, I will not address [this] claim in this brief." (SR. at 784.) Petitioner, however, filed a pro se reply brief and advised he had "not conceded" this issue. *Id*. at 1201. While acknowledging Petitioner raised this argument in his § 440.10 motion, the AD found this argument "to be abandoned on appeal[.]" *Palmer*, 161 A.D.3d at 1296, n. 3. Now, in his petition, Palmer argues this claim was not abandoned because it was presented in his "pro se supplemental brief." (Dkt. No. 1-1 at 13-29; Dkt. No. 31-1 at 5; SR. at 1201.)

Even assuming Petitioner's claim is properly before this Court, his claim is meritless. Petitioner was charged and tried on the superseding indictment returned by the Grand Jury in June 2014. Accordingly, Petitioner is not entitled to habeas relief on this ground. *See Macaluso v. Keyser*, No. 18-CV-4830, 2020 WL 8880941, at *4 (E.D.N.Y. Dec. 15, 2020) (reasoning that there was no waiver of indictment as the petitioner was "in fact charged and tried upon an indictment"). Therefore, I recommend the Court deny the petition on this ground.

### C. Defective Indictment and Jurisdiction

Petitioner argues the trial court lacked jurisdiction because the evidence before the Grand Jury was legally insufficient. (Dkt. No. 1-1 at 30.) To wit, Petitioner reiterates his previous claim that Trooper Hogan's testimony during the suppression hearing was inconsistent with the information in the complaint and indictment. *Id*. at 31.

As discussed *supra*, Petitioner's interpretation of Trooper Hogan's testimony is not supported by the record evidence. Moreover, claims regarding errors in Grand Jury procedure are not cognizable on federal habeas review where the petitioner was found guilty by a petit jury. *King v. Phillips*, No. 03-CV-6045, 2009 WL 891763, at *3 (E.D.N.Y. Mar. 31, 2009) (citing, *inter alia, United States v. Eltayib*, 88 F.3d 157, 173 (2d Cir. 1996) ("a guilty verdict by a petit jury remedies any possible defects in the grand jury indictment")); *Acevedo v. Superintendent*, No. 9:16-CV-0594 (LEK/DEP), 2018 WL 1326080, at *6 (N.D.N.Y. Feb. 16, 2018) ("[i]t is well-established that any claim of a defect in an indictment is cured by a jury's verdict of guilt beyond a reasonable doubt, based upon the premise that the conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt."); *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) ("If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are a fortiori foreclosed in a collateral attack brought in a federal court.").

Therefore, I recommend the Court deny the habeas petition on this ground.

### D. Judicial Misconduct

Petitioner argues the trial judge improperly acted as "a witness" during the prosecution's closing statement. (Dkt. No. 1-1 at 33.) During summation, while playing a video depicting

Petitioner's vehicle, the prosecution told the jury, "[w]e know therefore that Russell Palmer was in the car at the time that Sylvester was killed." *Id.* at 942. Defense counsel objected and argued, "there was no proof in this trial that that's a picture of Russell Palmer." *Id.* The Court responded:

> The Court: Of that picture?
> Mr. Blanchfield: Yeah.
> The Court: Yes, there is.
> Mr. Galarneau: Now, DNA - -
> The Court: And ladies and gentlemen, it's your recollection that controls.

(T. at 942.)

Petitioner claims the trial judge's comment involved an "issue for the jury" to determine and thus, demonstrates "bias and prejudice." (Dkt. No. 1-1 at 33.)

The AD did not specifically address this claim, but stated, "[w]e have considered [Petitioner's] remaining arguments and find them to be without merit." *Palmer*, 161 A.D.3d at 1296. One of those remaining claims was Petitioner's contention the Trial Court improperly identified Petitioner as the "perpetrator to the jury" during the prosecution's closing argument. (SR. at 831-833.) The AD's finding constitutes an adjudication on the merits rendering the AEDPA standard of review applicable with regard to that claim. *Francolino v. Kuhlman*, 365 F.3d 137, 141 (2d Cir. 2004); *Beckham v. Miller*, 366 F.Supp.3d 379, 388 (E.D.N.Y. 2019) (citing *Cavazos v. Smith*, 565 U.S. 1, 7, 9 (2011) (per curiam)), *appeal dismissed*, 2019 WL 4061513 (2d Cir. Aug. 6, 2019).

"Only judicial misconduct that renders the trial so fundamentally unfair as to violate federal due process under the Constitution requires habeas relief." *Salahuddin v. Strack*, No. 97-CV-5789, 1998 WL 812648, at *8 (E.D.N.Y. Aug. 12, 1998). "A trial judge's intervention in

23

the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a substantial degree before the risk of either impaired functioning of the jury or lack of the appearance of a neutral judge conducting a fair trial exceeded constitutional limits." *Daye v. Attorney General of State of N.Y.*, 712 F.2d at 1566, 1572 (2d Cir. 1983) (demonstrating "undesirable" conduct is not enough). To prevail on his claims of judicial misconduct, Petitioner must demonstrate he did not receive a trial "by an unbiased and impartial judge without a direct personal interest in the outcome of the hearing." *Ungar v. Sarafite*, 376 U.S. 575, 584 (1964). "The test is whether the jury was so impressed with the judge's partiality to the prosecution that it became a factor in determining the defendant's guilt, or whether 'it appeared clear to the jury that the court believed the accused is guilty.'" *United States v. Amiel*, 95 F.3d 135, 146 (2d Cir.1996) (quoting *United States v. Nazzaro*, 472 F.2d 302, 303 (2d Cir. 1973)).

A judge may take an "active role" during summation "to assure clarification of the issues before the jury." *McLean v. Conway*, No. 06 CIV. 0807, 2006 WL 2405067, at *19, n. 33 (S.D.N.Y. Aug. 21, 2006) (citing *People v. Grey*, 224 A.D.2d 318 (1st Dep't 1996)). Further, a trial judge may explain and comment on the evidence at trial, but must make it "clear to the jury that all matters of fact are submitted to [its] determination." *Quercia v. U.S.*, 289 U.S. 466, 469 (1933). A petitioner's conclusory allegations that a trial judge displayed prejudice or bias are "plainly insufficient to overcome the presumption that the trial court properly discharged its duties." *See White v. Walker*, 01-CV-0238 (GLS/DEP), 2007 WL 169702, at *17 (N.D.N.Y. Jan. 18, 2007) *see also Love v. Kuhlman*, 99-CIV-11063, 2001 WL 1606759, at *5 (S.D.N.Y. Dec. 12, 2001).

24

Here, the Court finds no evidence in the state court record of bias or prejudice or a fundamental miscarriage of justice with regard to the trial judge's comment. The evidence before the jury --- telephone records, videos, Leandry's testimony, and DNA evidence --- supports the conclusion that Petitioner was in the vehicle. Further, in a counseled brief on appeal, Petitioner's attorney conceded Petitioner was in the vehicle. Counsel states:

> Video recordings and testimony derived from police surveillance of Murray on the morning of the Scott shooting, augmented by recordings of telephone calls made on both defendants' telephones, show Murray driving the GMC Yukon and picking up Mr. Palmer about 45 minutes before the shooting[.]

(SR. at 206.)

Petitioner does not present a challenge to the admissibility of the videotape and does not point to any other comment or statement by the trial judge to suggest hostility or bias. The isolated comment during closing did not "approach[] the level of impropriety that would constitute" a constitutional deprivation. *See Salahuddin*, 1998 WL 812648, at \*8; *see also United States v. La Vecchia*, 513 F.2d 1210, 1215 (2d Cir. 1975) (finding the trial judge's one statement during closing, "standing alone" does not call for reversal of the conviction where "there was overwhelming and uncontroverted direct evidence that [the defendant] was involved in this counterfeiting operation."). Moreover, the trial judge clearly advised the jury that their recollection controlled.

Therefore, I recommend the Court deny the habeas petition on this ground. *See Rodriguez v. Town of W. New York*, 191 Fed. App'x 166, 168 (3d Cir. 2006) (finding no error where the trial judge sustained an objection by counsel, stating "[t]here's no testimony of any of

that. [. . .] The testimony was that Officer Heller had nothing to do with the tapes. And there's no testimony of coverup or any such thing in this case.").

### E.  Statements to Police

Petitioner claims his statements should have been suppressed because his Sixth Amendment rights were violated when he was interrogated by the State Police without counsel being present.  (Dkt. No. 1-1 at 34-35.)

Although the AD did not specifically address Plaintiff's Sixth Amendment rights in relation to the statement, the AD "disagreed" with Petitioner's argument that the Trial Court erred in failing to suppress the statement.  *Palmer*, 161 A.D.3d at 1293.  The AD noted Petitioner was arrested at 11:00 a.m. and transported to the Police Department where his *Miranda* rights were administered at 3:45 p.m., by officers who were not involved in the arrest.  *Id*.  The AD concluded the officers at the Police Department had sufficient evidence to establish probable cause for Petitioner's arrest.  *Id*.  The AD found "a thorough review of the record, evinces 'there is no demonstrable proof in the record that the initial detention of defendant was motivated by bad faith or a nefarious police purpose'" and found "no reason to disturb County Court's determination inasmuch as 'sufficient evidence that the required nexus between the detention and the statements is absent, there would be no deterrence and therefore no reason to invoke the exclusionary rule.'"  *Id*. (citation omitted).  The AD concluded, "the proof in this case is sufficient to support the finding of attenuation."  *Id*.

This Court can find no basis for concluding that the AD's reasoning would be any less applicable to Petitioner's Sixth Amendment argument involving the same statement rendering the claim subject to review under the AEDPA review standard.

The "Sixth Amendment right to counsel does not attach until the time that adversary judicial proceedings have been initiated" by, for instance, "formal charge, preliminary hearing, indictment, information, or arraignment." *Nimkoff v. Dollhausen*, 751 F.Supp.2d 455, 465 (E.D.N.Y. 2010) (internal quotation marks omitted); *Williams v. Artus*, 691 F.Supp.2d 515, 523 (S.D.N.Y. 2010).

In this matter, the subject statements were made by Petitioner to officers at the Police Station on December 23, 2013.  Trooper Hogan did not execute formal complaints against Petitioner until December 24, 2013.  (SR. at 40-44.)  Therefore, formal adversarial proceedings against Petitioner had not been commenced when the State Police spoke with him on December 23, 2013.  *See Madison v. Burge*, No. 07-CV-342, 2007 WL 3253568, at *5 (E.D.N.Y. Nov. 1, 2007) (concluding the Sixth Amendment was not implicated as the petitioner made the statements at issue when no complaint or indictment had been filed against him).  Accordingly, Petitioner's Sixth Amendment right to counsel had not yet attached.  The issue of whether Petitioner requested counsel at the time he made the statements is irrelevant.  *See Cilauro v. Duff*, No. 06-CV-0498 (NAM/DRH), 2009 WL 1405422, at *7 (N.D.N.Y. May 18, 2009) (reasoning that a factual dispute as to whether the plaintiff had been arrested prior to requesting counsel does not create a triable issue of fact because the record reveals that no charging instrument had been filed against the plaintiff and no formal adversarial proceeding had been initiated when he asked for an attorney) (citation omitted).

Therefore, I recommend the Court deny habeas relief on this ground.

### F. DNA Evidence

Petitioner argues the DNA evidence should have been suppressed because: (1) counsel was not present when the samples were collected; (2) the botched first DNA swab violated Petitioner's rights; and (3) the DNA testimony at trial was unreliable. (Dkt. No. 1-1 at 36-39.) Petitioner does not specifically allege a constitutional violation. However, as with all pro se pleadings, a habeas corpus petition that is filed pro se must be construed liberally, *see Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983), and Petitioner does claim his Sixth, Fourth, and Fourteenth Amendment due process rights were violated.

#### 1. Sixth Amendment

With regard to Petitioner's claim that his Sixth Amendment rights were violated because counsel was not present when the first DNA swab was collected on December 23, 2013, as discussed *supra*, the Petitioner's Sixth Amendment right to counsel had not yet attached on December 23, 2013.

A second DNA swab was taken from Petitioner on April 2, 2014. (Dkt. No. 1-1 at 36.) The record lacks evidence suggesting Petitioner requested counsel before that court ordered sample was collected. Moreover, courts have held there is no constitutional right to have counsel present for the collection of a DNA sample. *United States v. Lewis*, 483 F.3d 871, 874 (8th Cir. 2007); *Glenn v. Davis*, No. 3:14-CV-3403, 2016 WL 6902547, at *10 (N.D. Tex. Oct. 11, 2016), *report and recommendation adopted*, 2016 WL 6893680 (N.D. Tex. Nov. 21, 2016); *Simon v. Reiser*, No. CIV. 11-0137, 2012 WL 2884869, at *8 (D. Minn. Apr. 10, 2012), *report and recommendation adopted*, 2012 WL 2885078 (D. Minn. July 13, 2012).

Therefore, I recommend the Court deny habeas relief on this ground.

### 2. Fourth Amendment

To the extent Petitioner is alleging a Fourth Amendment violation related to the collection of the DNA, review of this claim is precluded pursuant to *Stone v. Powell*, 428 U.S. 465, 494 (1976), in which the Supreme Court held that federal habeas review is unavailable for Fourth Amendment claims where the state has provided a full and fair opportunity to litigate such a claim. "The *Stone v. Powell* doctrine applies to all Fourth Amendment claims, including claims of illegal stops, arrests, searches or seizures based on less than probable cause, and it applies regardless of the nature of the evidence sought to be suppressed." *Collier v. Sup't, Coxsackie Corr. Facility*, No. 9:18-CV-1104 (JKS), 2020 WL 2341062, at *11 (N.D.N.Y. May 11, 2020) (citing *Cardwell v. Taylor*, 461 U.S. 571, 572-573 (1983)).

It is well settled that New York provides an adequate corrective procedure for Fourth Amendment claims. *See, e.g., Capellan v. Riley*, 975 F.2d 67, 70 n.1 (2d Cir. 1992) (citing a motion to suppress evidence, pursuant to CPL § 710.10 *et seq.*, as a "facially adequate" and "approved" procedure for adjudicating alleged Fourth Amendment violations); *see also, e.g*, *Blake v. Martuscello*, No. 10-CV-2570, 2013 WL 3456958, at *5 (E.D.N.Y. July 8, 2013) (citing CPL § 710.10 and finding that the Second Circuit has explicitly approved New York's procedure for litigating Fourth Amendment claims).

The only requirement under *Stone* is that the state provide a petitioner the "opportunity" to litigate a Fourth Amendment claim. *McPhail v. Warden, Attica Corr. Facility*, 707 F.2d 67, 69-70 (2d Cir. 1983). "Mere failure to raise the issue in state court does not fulfill the latter condition." *Boddie v. Edwards*, No. 97 CIV.7821, 2005 WL 914381, at *4 (S.D.N.Y. Apr. 20, 2005). "[O]nce it is established that a petitioner has had an opportunity to litigate his or her

29

Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief." *Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002). "Dissatisfaction or disagreement with the outcome of a motion is not sufficient to establish that an unconscionable breakdown occurred in the existing process in violation of [petitioner's] constitutional rights." *McCormick v. Hunt*, 461 F.Supp.2d 104, 108 (W.D.N.Y. 2006) (internal quotation marks and citations omitted). In fact, both the Supreme Court and Second Circuit have expressly discouraged habeas courts from examining such outcomes. *Id*. (citing *Capellan*, 975 F.2d at 71 (explaining that if federal courts "read *Powell* as requiring [them] to focus on the correctness of the outcome resulting from the application of adequate state court corrective procedures, rather than on the existence and application of the corrective procedures themselves, we would be assuming . . . that state courts were not responsible forums . . . to bring constitutional claims[.]")).

Here, Petitioner requested, and received, a *Huntley* and *Dunaway-Mapp* hearing. Thus, Petitioner cannot "contend that New York failed to provide a corrective procedure to redress his alleged Fourth Amendment claim[.]" *McCormick*, 461 F.Supp.2d at 108. The suppression hearing was held over the course of two days. During the hearing, Petitioner's counsel had ample opportunity to object to the prosecution's direct questioning of six witnesses and to cross examine the witnesses. (H. at 1-193.) Petitioner had the opportunity to call witnesses, and declined to do so. *Id*. at 192. After the hearing concluded, Petitioner's counsel submitted a seven-page memorandum of law in support of suppression for the Trial Court's consideration and argued the evidence obtained from Petitioner's vehicle and Petitioner's statements should be

suppressed.  (SR. at 319-326).  Despite having adequate opportunity, Petitioner failed to present objections or challenges to the admissibility of DNA evidence at the hearing or in the supplemental submission; and opportunity is all that is required by the Supreme Court.  *See McCormick*, 461 F.Supp.2d at 108.  Therefore, the Court finds federal habeas relief is unavailable on Petitioner's Fourth Amendment claim.[10]  *See Bullock v. Grassiano*, No. 13 CIV. 5081, 2013 WL 5774870, at *5 (E.D.N.Y. Oct. 24, 2013); *see Boddie*, 2005 WL 914381, at *4.

Therefore, I recommend the Court deny habeas relief on this ground.

### 3.  Fourteenth Amendment

Petitioner contests the admissibility of DNA testimony arguing the prosecution's witnesses were not credible "and should have been excluded from testifying."  (Dkt. No. 1-1 at 37-38.)  "[T]he admissibility of evidence is generally an issue of state law and, therefore, not cognizable on habeas unless it also implicates a federal right."  *Philips v. Brown*, No. 08-CV-2625, 2011 WL 1984520, at *6 (E.D.N.Y. May 20, 2011).  "[T]he erroneous admission of evidence can violate due process if the error 'is so extremely unfair that [it] violates fundamental conceptions of justice.'"  *Id.* (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990) (citation omitted).

---

[10]  In his Traverse, Petitioner makes the conclusory allegation that "counselors were all ineffective in for [sic] failing to 'develop a valid suppression claim'[.]" (Dkt. No. 31-1 at 4, 14.)  It is well established that a Petitioner cannot raise new grounds for relief in his traverse.  *See Parker v. Smith*, 858 F.Supp.2d 229, 233 n.2 (N.D.N.Y. 2012) (citing *Voymas v. Unger*, No. 10-CV-6045, 2011 WL 2670023, at *13 (W.D.N.Y. July 7, 2011); *Jones v. Artus*, 615 F.Supp. 2d 77, 85 (W.D.N.Y. 2009)).  Moreover, "[b]efore seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, . . . thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quotation marks and other citations omitted)); 28 U.S.C. § 2254(b)(1). The prisoner must "fairly present" his claim in each appropriate state court, including the highest court with powers of discretionary review, thereby alerting that court to the federal nature of the claim. *Id.*; *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).  Here, the record establishes Petitioner never argued an ineffective assistance of counsel claim, as it related to the suppression hearing, in New York court.  Thus, this contention could not form the basis for habeas relief in any event because it is unexhausted.

At most, Petitioner's claim is simply an attack on the witnesses' credibility, but this Court must defer to the jury's credibility findings concerning that testimony.  *See Bellezza v. Fischer*, No. 01-CV-1445, 2003 WL 21854749, at *15 (E.D.N.Y. Aug. 6, 2003) (holding "a federal habeas court must presume that the jury resolved any questions of credibility in favor of the prosecution") (internal quotation marks and citation omitted).

Therefore, I recommend the Court deny the habeas petition on this ground.

### G.  Defective Search Warrant

Petitioner claims he is entitled to habeas relief because there were various defects with the search warrant.  (Dkt. No. 1-1 at 39-43, 46-48.)

"The merits of a state court's determination . . . support[ing] the issuance of a search warrant may not be challenged on habeas review, provided that state courts afforded an opportunity for full and fair litigation of a claim under the Fourth Amendment."  *Martinez v. Miller*, No. 9:04-CV-0090 (GTS/DEP), 2009 WL 1272069, at *16 (N.D.N.Y. May 5, 2009) (citing cases).

Here, as discussed in Part II(F)(2), *supra*, Petitioner availed himself of New York's procedure for challenging search warrants and the admissibility of evidence seized therefrom. After a two-day hearing and upon reviewing counsel's supplementary submissions, the Trial Court found the Trial Court denied Petitioner's motion to suppress evidence seized from the Yukon.  (SR. at 346.)  Petitioner's disagreement with the state court outcome is insufficient to warrant habeas relief.  *See Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977).

Accordingly, the undersigned recommends denying habeas relief on this ground.

**H.  Cell Phones**

Petitioner argues evidence obtained from two cell phones seized by detectives on December 23, 2013, should be suppressed.  (Dkt. No. 1-1 at 46-48.)  Petitioner contends Det. Quinlivan "looked into the cell phones" on December 23, 2013, at 3:45 p.m. however, a warrant was not issued for the telephones until March 27, 2014.  *Id*.

As discussed in Part II(F)(2) *supra*, Petitioner had the opportunity to litigate his Fourth Amendment claims in the state court proceeding.  Indeed, Petitioner availed himself of New York's procedure for challenging search warrants and the admissibility of evidence but failed to present any arguments related to the cell phones confiscated on December 23, 2013.  For the reasons set forth in Part II(F)(2) *supra*, the Court finds that federal habeas relief is unavailable on Petitioner's Fourth Amendment claim related to his cell phones.

Accordingly, the undersigned recommends denying habeas relief on this ground.

**I.  Sufficiency of the Evidence Regarding Conspiracy**

Petitioner argues there was insufficient evidence to convict him of conspiracy in the second degree.  (Dkt. No. 1-1 at 44-46.)  The AD addressed the evidence related to the conspiracy charge and stated:

> Evidence surrounding [Petitioner's involvement in a shooting that occurred two days prior to the victim's death] constitutes additional evidence of the charged crime of conspiracy as evidence of an over act committed by defendant in furtherance of the conspiracy to commit murder.

(SR. at 1225.)  Accordingly, the AD's decision is deserving of deference.

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to

constitute the crime(s) with which he is charged. *See Fiore v. White*, 531 U.S. 225, 228–29 (2001); *Jackson v. Virginia*, 443 U.S. 307, 315 (1979); *In re Winship*, 397 U.S. 358, 364 (1970). This inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original). A habeas petitioner claiming that there was insufficient evidence supporting the conviction is entitled habeas relief only if "upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324; *Schlup v. Delo*, 513 U.S. 298, 323 n.38 (1995). The burden on a habeas petitioner challenging the sufficiency of the evidence is "very heavy." *Einaugler v. Supreme Court*, 109 F.3d 836, 840 (2d Cir. 1997). The reviewing court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor. *Jackson*, 443 U.S. at 319. The "assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup*, 513 U.S. at 330. The relevant inquiry is "whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt." *United States v. Powell*, 469 U.S. 57, 67 (1984) (citations omitted).

"When considering the sufficiency of the evidence of a state conviction, '[a] federal court must look to state law to determine the elements of the crime.'" *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (quoting *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir.1999)). According to NYPL § 105.15 "[a] person is guilty of conspiracy in the second degree when, with intent that conduct constituting a class A felony be performed, he agrees with one or more persons to engage in or cause the performance of such conduct." "[T]he Government is not required to show the existence of a formal or express agreement. Rather, evidence of a tacit

understanding to carry out the prohibited conduct will suffice." *Charon v. United States*, No. 96 CR 586, 2000 WL 1218372, at \*4 (S.D.N.Y. Aug. 28, 2000) (internal quotation marks omitted) (citing, *inter alia, United States v. Rivera*, 971 F.2d 876, 891 (2d Cir. 1992)).

Here, Petitioner argues there was insufficient evidence that he "agreed with anyone to conduct any crime." (Dkt. No. 1-1 at 44.)  Specifically, he points to the lack of testimony as to any oral admission, recorded conversation, or written agreement.  *Id.*

This argument does not meet Petitioner's heavy burden of showing that no rational trier of fact could have found proof of guilt beyond a reasonable doubt.  The jury heard testimony from Leandry that he met Murray and Petitioner on December 20, 2013, and gave Murray a 9-millimeter Ruger semi-automatic pistol and bullets.  (T. at 464-466.)  The jury also heard evidence that Murray called Leandry a second time, on December 21, 2013, at approximately 10:42 p.m. and asked if Leandry had another gun.  *Id*. at 466-467.  The jury also heard evidence that a Ruger 9-millimeter seized from Petitioner's vehicle was used in a shooting on December 21, 2013, in the area where Scott was murdered two days later.  *Id*. at 79-82, 630.  The jury was also presented with evidence of telephone calls between Murray and Petitioner on December 23, 2013, at 7:58 a.m. and 7:59 a.m.  *Id*. 231-232, 493-506.  This evidence was sufficient for a reasonable trier of fact to conclude that Petitioner was guilty of the charged offense.  Considering the evidence presented at trial, this Court is not persuaded that "it is more likely than not that no reasonable juror would have convicted."  *Schlup*, 513 U.S. at 329.

Therefore, I recommend the Court deny the petition on this ground.

**J.  Jury Instructions**

Petitioner claims he is entitled to habeas relief because the trial court's jury instructions related to the charge of murder in the second degree were contradictory and confusing.  (Dkt. No. 1-1 at 48-49; SR. 855-862.)

The adequacy of a state court's jury instructions is generally a matter of state law.  *Cupp v. Naughten*, 414 U.S. 141, 146 (1973).  Habeas relief requires a petitioner to base his claims on a violation of the federal Constitution, and Petitioner must therefore show that the trial court's failure to give a certain jury instruction violated a right guaranteed to him by the Fourteenth Amendment.  *Id*. at 146.  "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Lanza v. Lewin*, No. 9:04-CV-0678 (LEK), 2008 WL 4104454, at *16 (N.D.N.Y. Sept. 3, 2008) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (other citation omitted)).

"[W]here, as here, an error in a jury instruction is alleged, it must be established not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Smith v. Artus*, 610 Fed. App'x 23, 25–26 (2d Cir. 2015) (citation and internal quotation marks omitted).  "A [habeas] petitioner seeking habeas relief based on a trial court's jury charge faces a heavy burden [because] 'not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation[.]" *Mack v. Lavalley*, No. 1:13-CV-8194, 2016 WL 3077877, at *11 (S.D.N.Y. May 31, 2016) (citing *inter alia Suarez v. Bennett*, 171 Fed. App'x 361, 364 (2d Cir. 2006)).  "[A] single instruction to a jury may not be judged in artificial

isolation, but must be viewed in the context of the overall charge." *Middleton v. McNeil*, 541

U.S. 433, 437 (2004) (internal quotation marks omitted).

Here, the Trial Court instructed the jury that while there were two defendants and two

trials "in one," the jurors should "evaluate the evidence as it applies or fails to apply to each

defendant separately" and directed the jurors to "return a separate verdict for each defendant and

those verdicts may be but need not be the same."  (T. at 1020.)

The Trial Court advised:

> Our law recognizes that two or more individuals can act jointly to
> commit a crime and that in certain circumstances each can be held
> criminally liable for the acts of the other.  In that situation those persons
> can be said to be acting in concert with each other.  Our law defines the
> circumstances under which one person may be criminally liable for the
> conduct of another.

 (T. at 1020-1021.)

The Trial Court then instructed the jury with respect to the first count, murder in the

second degree:

> Under our law a person is guilty of murder in the second degree when,
> with the intent to cause the death of another person, he personally or
> while acting in concert with another person causes the death of such
> person.

(T. at 1022-1023.)

With respect to Petitioner, the Trial Court stated:

> In order for you to find the defendant Russell Palmer, guilty of this
> crime, the People are required to prove from all the evidence in the case
> beyond a reasonable doubt both of the following two elements: One,
> that on or about December 23, 2013, in the county of Albany, New
> York, the defendant, Russell Palmer, personally or while acting in
> concert with another person, caused the death of Sylvester Scott; and,

37

> two, that the defendant did so with the intent to cause the death of Sylvester Scott.

(T. at 1023.)

After deliberations began, the Trial Court received notes from the jury.  (T. 1070, 1075, 1087, 1102.)  In several notes, the jury presented questions related to the charge of murder in the second degree however, all of the questions/notes were specific to the charge as against Mr. Murray.  *Id*. at 1102-1103, 1108, 1117.  Indeed, the only jury note that referenced Petitioner was related to the conspiracy charges.  *Id*. at 1083.  In response to the conspiracy inquiry, without objection from counsel, the Court reread the full conspiracy instruction regarding both defendants.  (T. at 1084, 1086-1087.)

In regard to the murder charge against him, Petitioner has not demonstrated that the jury was confused by any instruction, that the instructions were flawed, or that the instructions resulted in an unsupported verdict.  *See Herron v. Fields*, No. 17 CV 07221, 2021 WL 706334, at *18 (S.D.N.Y. Jan. 7, 2021), *report and recommendation adopted*, 2021 WL 695111 (S.D.N.Y. Feb. 19, 2021).  The jury did not ask for clarification on the murder charge as it related to Petitioner, and defense counsel did not object to the instruction related to murder in the second degree at the time of trial.  (T. at 1062.)  Petitioner's speculation does not establish that the challenged instruction was unconstitutional or that Petitioner was denied a fair trial.

Therefore, I recommend the Court deny the petition on this ground.

## III.   CERTIFICATE OF APPEALABILITY

28 U.S.C. § 2253(c)(1) provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from – (A) the final order in a

habeas corpus proceeding in which the detention complained of arises out of process issued by a

State court[.]"  28 U.S.C. § 2553(c)(1).  A court may only issue a Certificate of Appealability "if

the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §

2553(c)(2).

Since Petitioner has failed to make such a showing with regard to any of his claims, the

Court recommends declining to issue a Certificate of Appealability in this matter.  *See Hohn v.*

*United States*, 524 U.S. 236, 239-40 (1998) (quotation omitted).

## IV.    CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the

applicable law, and for the reasons stated herein the Court hereby

**RECOMMENDS** that the petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED**

**and DISMISSED**; and the Court further

**RECOMMENDS** that no Certificate of Appealability shall be issued with respect to any

of Petitioner's claims; and the Court further

**ORDERS** that the Clerk provide Petitioner with a copy of this Order and

Report-Recommendation along with a copy of the unpublished decisions cited herein in

accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009)

(per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1)

(Supp. 2013); Fed. R. Civ. P. 72, 6(a).

**IT IS SO ORDERED.**

Dated:      October 19, 2021
              Syracuse, NY

Thérèse Wiley Dancks
United States Magistrate Judge